UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**SYLVIA CRAIG,**

Plaintiff,

v. **No. 4:25-cv-01235-P**

**LIBERTY MUTUAL PERSONAL INSURANCE COMPANY,**

Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Liberty Mutual Personal Insurance Company's ("Liberty Mutual") Motion for Summary Judgment ("Motion"). ECF No. 22. Having reviewed the Motion, the filings, the record, and the applicable law, for the reasons described below, the Court will **GRANT** the Motion. The case is therefore **DISMISSED with prejudice**.

## BACKGROUND

This case concerns a shoot-out, a Molotov cocktail, and an insurance policy. Ms. Craig represents the estate of her nephew, Kemal Shea, Jr. ("Shea"), who was killed during a police shoot-out that culminated in a conflagration. ECF No. 1-2. During the shoot-out, Shea threw an improvised incendiary device (also known as a Molotov cocktail) from his window. The Molotov landed on his porch, caught aflame, and started the fire that consumed his home and ultimately took his life.[1]

[1]Even viewed in the light most favorable to the plaintiff, the evidence indisputably supports this series of events. Sergeant Hunter Van Zandt "saw Shea throw a Molotov cocktail, but did not see it land. Nothing immediately happened, but shortly after, a fire sprang up. It then quickly spread, eventually engulfing the residence and several of the vehicles surrounding it." ECF No. 24, App.129 at ¶6–8. Deputy Meza, too, observed Shea "toss a yellow-colored

Ms. Craig was a lienholder for the house, which Liberty Mutual insured, and sole beneficiary of the Estate. ECF No. 25 at 7. Ms. Craig timely submitted a claim seeking coverage for physical loss to property. Liberty Mutual denied Ms. Craig's claim, asserting that the fire was excluded from coverage under the policy, but did pay her mortgage balance. ECF No. 23 at 5.[2] Ms. Craig therefore sued Liberty Mutual, alleging breach of contract and various extracontractual claims. ECF No. 1.

## LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when it might affect the outcome of a case. *Id.* Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

---

container, with what appeared to be a rag on fire, stuffed into the container," out of the building. App.141. Chief Deputy Christopher Williams attested that Shea "lit the rag on fire, and then threw the jug onto his back porch" ECF No. 24, App.131-132, Williams Affidavit at ¶¶ 2-3; ¶¶ 6-7. Tarrant County's Deputy Fire Marshal, Keith Ebel "determined that the fire originated from the incendiary device that [Shea] threw out from the rear of the structure." ECF No. 24, App.135, Ebel Affidavit at ¶ 11. Ms. Craig seizes on the fact that "Sergeant Van Zandt stated that he did not witness the object descend," and that "Deputy Meza was uncertain on the duration that elapsed before he observed flames adjacent to the yellow container," apparently to dispute the premise that Shea threw the Molotov at all. ECF No. 25 at 8. But that is not enough to create a genuine dispute of material fact. The uncontroverted evidence show that Shea threw the Molotov from his window, started the fire, and destroyed his home.

[2]That is because the intentional loss exclusion does not apply to the valid claim of a mortgagee listed on the Policy, provided the mortgagee complies with certain requirements, which Ms. Craig did. *See* ECF No. 23 at 5, App.049. The only remaining dispute concerns claims on behalf of Shea's estate that are subject to the intentional loss exclusion.

When determining whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). In conducting its evaluation, the Court may rely on any admissible evidence available in the record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3). The Court need not sift through the record to find evidence in support of the nonmovant's opposition to summary judgment. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003). When the movant bears the burden of proof at trial, it must establish every essential element of its claim or defense. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1994 (5th Cir. 1986).

Because "the interpretation of an insurance contract is a question of law reviewed *de novo*," contract disputes are well suited for summary disposition. *Century Surety Co. v. Seidel*, 893 F.3d 328, 332 (5th Cir. 2018) (citation omitted). "[O]nly when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (citations and internal quotation marks omitted).

**B. Interpretation of Insurance Contracts**

When jurisdiction in federal courts is based on diversity, forum state law applies. In Texas, insurance policies are subject to the same interpretive rules as other contracts. *See, e.g.*, *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 300 (5th Cir. 2020). An ambiguous exclusion is construed in favor of coverage so long as the insured's interpretation is reasonable, even if the insurer's reading is more persuasive. *Nassar v. Liberty Mut. Fire Ins. Co.,* 5078 S.W.2d 254, 257–58 (Tex. 2017). However, ambiguity does not arise simply because parties disagree as to the meaning of a provision. *Am. Home Assur. Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 220 (5th Cir. 2011); *see also Gonzalez*, 394 F.3d at 392. True ambiguity requires that the term be susceptible to two or more reasonable interpretations. *Am. Home Assur. Co.,* 660 F.3d at 220. If the contract can be given a clear, definite meaning, then it is not ambiguous as a matter of law. *Id.*

In coverage disputes, the "insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy." *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998). Once the insurer has proven that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion. *Id.*

## ANALYSIS

The parties do not seriously dispute whether Shea threw the Molotov. They agree that he did. Nor do they dispute that he intended to set his home on fire. They agree he did not. The question is whether the circumstances of the throw establish intent to cause a loss.

The dispute begins with the policy language. The Policy's "Intentional Loss" exclusion reads as follows:

> **SECTION I - EXCLUSIONS**
>
> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> **A.8. Intentional Loss**
>
> **a.** Intentional Loss means *any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.*
>
> In the event of such loss, no "insured" is entitled to coverage even "insureds" who did not commit or conspire to commit the act causing the loss.

(ECF No. 24, App.023-025, Policy, Section I Exclusions; App.042, Endorsement; Special Provisions – Texas, Section I Exclusion, A.8.) (emphasis added). The parties interpret the loss exclusion differently. Ms. Craig argues the exclusion requires Liberty Mutual to prove two conditions: 1) that Shea intended the act, and 2) that when he committed the act, he also intended the loss. ECF No. 25 at 10. To support this reading, she points to the relatively idiosyncratic policy language that

defines intentional loss to mean one arising out of an act that the insured commits "*with the intent to cause a loss*." *Id.* (emphasis added). By contrast, Liberty Mutual argues that the exclusion means simply that Shea intended the act—tossing the Molotov—at least so long as the loss could be reasonably anticipated from the act. ECF No. 23 at 11. To support this reading, Liberty Mutual points to cases which distinguish accidents or occurrences that result in loss from intentional acts.

*First*, the language is not ambiguous. The parties advance different readings of the language, but not due to any lexical or syntactic uncertainty. That is, they do not argue that *the word*s in the provision are susceptible to multiple definitions such that the meaning of the exclusion is irresolvable. Nor is it the *grammatical structure* of the provision that creates an irreducible uncertainty.[3] They just disagree about whether the law permits the Court to infer intent to cause a loss from the act itself. That is a disagreement about what the law requires, not semantic indeterminacy. In short, they agree that the loss must be intentional. They just disagree about what is required to prove that, and its application to an undisputed set of facts in the instant case. That is not an ambiguity that would require construing the policy against the drafter. Nor is it one that must be reserved for the jury. The Court therefore turns to when intent can be inferred as a matter of law.

*Second*, the law permits the Court to infer intent to cause the loss from the nature and circumstances of the insured's act. Under Texas law, a person intends a result if he subjectively desires it or believes it is substantially certain to follow. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W. 2d 374, 378–79 (Tex. 1993). A straightforward syllogism applies this logic to the exclusion. The exclusion governs when an insured

---

[3] *See* Sanford Schane, *Ambiguity and Misunderstanding in the Law*, 25 T. Jefferson L. Rev. 167, 171–72 (2002) ("This kind of ambiguity often involves, what linguists refer to, as *scope of modification*. Notice the scope of the word *skinny* in the sentence: "The skinny general's daughter was the belle of the ball." Who is skinny? The general or his daughter? The adjective skinny potentially can modify either noun. Structural ambiguity frequently results also due to the placement of a prepositional phrase. Consider the sentence: "John asked Bill to leave on Wednesday." Did John do the asking on Wednesday, or was Bill to leave on that day? Here the scope of the adverbial modifier on Wednesday can be either the main clause or else the contained infinitival clause.") Neither of these forms apply in the instant case.

commits an act with intent to cause a loss and the loss arises out of that act. Intent to cause loss may be inferred as a matter of law when the nature and circumstances of that act make the loss substantially certain. Shea deliberately threw a lit incendiary device onto his back porch. It is substantially certain that fire damage will occur. The law therefore imputes intent to cause that damage, including the loss that arose from the fire.

The case law is littered with cases addressing whether the foreseeable consequences of an intentional act qualify as an accident. For example, reasoning about whether an act that resulted in loss was an accident or not, the Fifth Circuit noted that "[i]f the resulting injury ordinarily follows from or could be 'reasonably anticipated' from the intentional act, then the act is not an accident." *Discover Prop. & Cas. Ins. Co. v. Blue Bell Creameries USA, Inc.*, 73 F.4th 322, 331 (5th Cir. 2023) (citations omitted).[4]

This premise applies not just to whether the *act* is accidental, but also to whether the *loss* is. "[W]hen harm to property is caused by the intentional act of one party, it cannot be characterized as 'accidental' or an 'event' causing an 'occurrence' under an insurance policy." *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1117 (7th Cir.

[4] Ms. Craig argues that these cases are inapposite because they analyze what qualifies as an accident, not what qualifies as intentional loss. ECF No. 25 at 13. In her view, the court must interpret the language before the court, not reason generally about insurance as a mechanism to cover accidental loss. True, it is the language of the policy that governs. But that does not mean cases defining accidents or occurrences are irrelevant to construing the exclusion. The cases explain accidental acts by what they are not: intentional ones. And in doing so these courts reason about what it means for loss to be intentional. A loss is either accidental or it is intentional, and Ms. Craig does not—and indeed could not—point to some third category identified in the case law. *See Frederking v. Cincinnati Ins. Co.*, 929 F.3d 195, 198 (5th Cir. 2019) (reasoning that the term "accident" is defined by what it excludes—intentional acts).

This Court needn't interpret from whole cloth simply because no other in-circuit court has passed upon identical language. In any event, *IDS Prop. Cas. Ins. Co. v. Crawford*, 16 F. Supp. 3d 1236 (W.D. Wash. 2014), *aff'd*, 671 Fed. App'x. 524 (9th Cir. 2016) applied an identical intentional loss exclusion to bar coverage for damage caused by the insured's intentional acts. Applying Washington law, the district court inferred the insured's intent from her actions. *Id.* The Ninth Circuit then endorsed the very same imputed-intent reasoning this Court adopts. 671 Fed. App'x. at 525.

1995) (applying Texas law) (citations omitted). The cases explicitly connect the two: "Where acts are voluntary and intentional and the injury is the natural result of the act, the result was not caused by accident even though that result may have been unexpected, unforeseen and unintended." *Id.* at 1117–18; *see also Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973) ("stating that when 'acts are voluntary and intentional and the injury is the natural result of the act, the result was not caused by accident . . .'"); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 402 (5th Cir. 2008) ("In Texas, deliberate acts may constitute an accident unless: (1) the resulting damage was highly probable because it was the natural and expected result of the insured's actions, (2) the insured intended the injury, or (3) the insured's acts constitute an intentional tort, in which case, the insured is presumed to have intended the injury.") (citation and quotation marks omitted) (emphasis added). Contrary to Ms. Craig's reading, the cases provide no reason to artificially decouple the intent of the act from the intent to cause loss.

*Tanner* does not hold otherwise. There, a high-speed police chase made collision foreseeable. But since the chase could have ended in several ways, and the insured actively attempted to *avoid* collision, the Texas Supreme Court held that the insurer had failed to establish intent to injure as a matter of law. *Tanner v. Nationwide Mut. Fire Ins. Co.,* 289 S.W.3d 828, 832–34 (Tex. 2009). Here, the facts are distinguishable, and the relevant question under this exclusion is whether the loss was substantially certain to follow. Other courts reason similarly about nearly identical intentional loss provisions. *See, e.g. Taylor v. LM Ins. Corp.*, No. 20-3166, 2022 WL 2662080, at *1 (10th Cir. July 11, 2022) (applying Kansas law and holding that the insured's intent to burn a bedspread triggered the exclusion for damage to the house when the fire spread); *Nationwide Mutual Fire Ins. Co. v. May*, 860 F.2d 219, 223 (6th Cir. 1988) (noting that "The Kentucky courts have more generally concluded that an intentional act exclusion will be invoked when the injury is a foreseeable or expected consequence of the actor's volitional acts, and not merely fortuitous or accidental."); *Tartour v. Safeco Ins. Co. of Illinois*, No. 17-1896, 2020 WL 489467 (E.D. Pa. Jan. 30, 2020) (writing that "Pennsylvania courts interpreting intentional loss

exclusion provisions have held that '[a]n insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result.'") (internal citations omitted).

*Third*, the law imputes intent to this act. The question that remains is whether throwing a Molotov cocktail within the vicinity of your dwelling is one such act. It surely is. "The dictionary definition of a Molotov cocktail is 'a crude hand grenade made of a bottle filled with a flammable liquid (as gasoline) and fitted with a wick or saturated rag taped to the bottom and ignited at a moment of hurling.'" *United States v. Ross*, 458 F.2d 1144, 1145, n. 2 (5th Cir. 1972) (citing Webster's Third New International Dictionary of the English Language (1961)). The purpose of such a device is to rapidly spread flames. *See, e.g.*, *United States v. York*, 600 F.3d 347, 354 (5th Cir. 2010) (reviewing cases and holding "that a Molotov cocktail falls within the definition of a destructive device under section 921(a)(4)(A) because it is an incendiary bomb.").[5] Williams attested that Shea lit the rag and threw the device onto his back porch. ECF No. 24, App.131–32. Fire damage at the point of impact was substantially certain. Deliberately directing a burning device designed to spread fire onto part of the house was substantially certain to cause fire damage to the surrounding area. Even if Shea's subjective intent was to deter the officers, his intentional act was substantially certain to set fire to his porch. The loss incurred to his home was a natural and probable consequence of that act.[6]

---

[5] Nor does it matter for purposes of summary judgment that there remains dispute whether the make-shift incendiary device was technically a Molotov cocktail. *Contra* ECF No. 25 at 12. The purpose, function, and natural and probable consequence of the device thrown from the window, whatever nomenclature it is given, is not disputable.

[6] Fire Marshall Ebel traced the fire to the same device. ECF No. 24, App. 135. That Shea did not anticipate the extent of this act is no matter: "Texas courts have been extremely reluctant to declare the consequences of an unlawful act as accidental. Where the type but not the extent of the damages is predictable, Texas courts refuse to classify the act or its effects as an 'accident.'" *Matl v. St. Paul Fire & Marine Ins. Co.*, 31 Fed. App'x. 838 (5th Cir. 2002) (citation omitted).

This coheres with the language of the policy. "A loss" identifies what the insured must intend to cause, while "any loss arising out of" identifies the resulting damage the exclusion reaches. Thus, whether the intent to burn his house down flickered across his mind is beside the point. Based on the nature of the act, the law imputes the intent to cause the loss. This completes the syllogism. The loss (destruction of the property) arose out of an act (throwing the incendiary device) the insured intentionally committed with the (imputed) intent to cause the loss. The exclusion must apply.

*Finally*, because Ms. Craig's breach of contract and extracontractual claims are predicated on wrongful denial of coverage, those claims must fail as well. *See* ECF No. 7. As explained above, there can be no breach because denial was not improper. As for the extra-contractual claims, those too are barred where there is no coverage or mishandling of the claim. "To have a bad faith claim under either the Texas Insurance Code or Texas common law, the insured must have a claim covered under an insurance policy." *Certain Underwriters at Lloyds London v. Corp. Pines Realty Corp.*, 355 Fed. App'x. 778, 783 (5th Cir. 2009) (citation omitted). Here, there is no covered loss, and so there cannot be bad faith. *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995) (citations omitted) ("As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered."). Ms. Craig identifies no evidence that Liberty Mutual's handling of the claim caused an injury independent of the denial of policy benefits. Because the policy excludes the loss, those claims fail as well.

## CONCLUSION

Accordingly, for the reasons described above, the Court **GRANTS** the Motion for Summary Judgment. ECF No. 22. The case is therefore **DISMISSED with prejudice**.

**SO ORDERED** on this **20th day of November 2026.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE